IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| RAY, INC., ) | |
| Plaintiff; ) | |
| ) | |
| vs. ) | 7:11-cv-3553-LSC |
| NATIONWIDE MUTUAL FIRE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OF OPINION

I. Introduction

Before this Court is a motion for summary judgment filed by Defendant Nationwide Mutual Fire Insurance Company ("Nationwide") on June 27, 2012. (Doc. 36.) Nationwide seeks summary judgment as to Plaintiff's claims for breach of contract and bad faith. (*Id.* at 3.) A brief in support of the motion was contemporaneously filed. (*Id.*) Plaintiff filed a response to the motion on July 13, 2012 (Doc. 38), and Nationwide filed a reply brief on July 23, 2012. (Doc. 41.) This motion is now ripe for decision.

II. Facts[1]

---

[1] The facts set out in this opinion are gleaned from the parties' individual submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving

Nationwide insured Plaintiff pursuant to a Businessowners policy. On April 15, 2011, a tornado struck the Coventry neighborhood in Tuscaloosa. Included in the tornado's path were the houses that are the subject of this action. On that day, several of Plaintiff's rental properties in Coventry sustained substantial damage, and as a result of the damage, Plaintiff made a claim with Nationwide.

Nationwide's agent, Mr. Jeffrey Rowell ("Rowell"), visited the sites to inspect the damage. Rowell determined that three of the houses were repairable while one was a total loss. He calculated the actual cash value (the "ACV") of the properties by inputting data into a computer program known as "Exactimate," allowing for necessary materials and labor at an observed local market rate. Rowell then incorporated the resultant amount into a report for Plaintiff. The report, along with checks for the calculated actual cash value of the properties, was sent to Plaintiff on April 20, 2011. Plaintiff then cashed the checks.

Since filing its claim, Plaintiff has contended that all four houses were a total loss. In July, more than two months after the tornado, Plaintiff contacted Nationwide to dispute the amount of the insurance payments it received. Because of the dispute, Nationwide hired an engineering consultancy firm to perform a second inspection of

---

party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

the damaged properties. Additionally, Nationwide scheduled a walk-through to be performed with Plaintiff and Plaintiff's engineer on August 3, 2011. The engineering consultancy firm performed its home inspection on July 14, 2011. The consultancy firm created reports of its inspections that were sent to Plaintiff on August 1, 2011. That same day, Plaintiff's representative, Mr. Lang Ray, cancelled the walk-through that was set for August 3, 2011, and indicated that he would not reschedule until Plaintiff's engineers performed an inspection.

On August 3, 2011, Plaintiff informed Nationwide that Plaintiff's engineer had determined that the homes were structurally unsound and recommended demolition of the properties. Plaintiff further stated that it would demolish the properties on August 10 in the absence of any agreement. Finally, Plaintiff directed that Rowell should call Plaintiff if Nationwide had any objections. On August 10, Nationwide mailed a response letter via certified mail to Plaintiff. On that same day, Plaintiff demolished the three standing houses. Plaintiff responded to Nationwide's August 10 letter on August 22, 2011, and included a copy of Plaintiff's engineer's reports.

III. Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the movant has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting FED. R. CIV. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224

(11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV. Discussion

    A. Breach of Contract Claim

Plaintiff alleges that Nationwide "breached the policy of insurance by failing to pay the [ACV] or debris removal due and [] failed to pay the same without adequate excuse or reason." (Doc. 1 at 11.) " 'The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages.' " *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (quoting *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002)).

Nationwide asserts two reasons for why its Motion for Summary Judgment as to Plaintiff's breach of contract claim should be granted. First, Nationwide argues that Plaintiff did not perform under the contract by failing to cooperate and permit Nationwide to re-inspect the damaged homes. Second, Nationwide argues that Plaintiff cannot prove damages because it can offer no evidence or expert testimony on what the correct ACV amount should be for the four homes.

        1. Plaintiff's Failure to Cooperate and Allow Inspection

In this case, the parties' insurance policy specifies a duty to cooperate and a duty to allow reasonable inspection. (Doc. 36 at 10–11.) The duty to cooperate states that the insured must "[c]ooperate with [the insurer] in the investigation or settlement of the claim." (*Id.* at 11.) The duty to allow reasonable inspection states that the insured must, "[a]s often as may be reasonably required, permit [the insurer] to inspect the damaged property." (*Id.*) Nationwide contends that Plaintiff's alleged failure to cooperate and permit inspection constitutes a breach of these provisions, relieving Nationwide from any further obligations under the insurance policy. *See Nationwide Ins. Co. v. Nilsen*, 745 So. 2d 264, 267 (Ala. 1998).

While it may be true that, from the start, Plaintiff contended that all four houses were a total loss, the evidence indicates that it did not contest the ACV amounts paid by Nationwide until early July. At that time, Nationwide began to reinspect and evaluate Plaintiff's supplemental claims. The engineering firm hired by Nationwide inspected the damaged properties on or about July 14, 2011, and issued a report. Plaintiff, however, contends that Nationwide's firm did not perform a proper structural analysis of the properties or discuss the structural soundness in their report. Due to this, Plaintiff cancelled a planned walk-through and indicated that it would not allow access to the properties until such time as Plaintiff's engineer could review the premises. A few days later, Plaintiff informed Nationwide that its engineer reported

that the houses were structurally unsound, and that the houses would be demolished on August 10, 2011, unless Nationwide called and objected. After receiving no objections, Plaintiff demolished the properties on the date specified.

Ordinarily, what constitutes a failure to cooperate by the insured is a question of fact, and the insurer has the burden of proving non-cooperation. *Ex parte Clarke*, 728 So. 2d 135, 141 (Ala. 1998). "An insurer 'cannot avoid its obligations on this ground' unless the insured's failure to cooperate 'is both material and substantial.'" *Id.* (quoting *Home Indem. Co. v. Reed Equip. Co.*, 381 So. 2d 45, 48 (Ala. 1980)). In order to prove Plaintiff's performance under the contract, "the plaintiff must prove that it substantially performed its obligations under the contract." *Superior Wall & Paver, LLC v. Gacek*, 73 So. 3d 714, 721 (Ala. Civ. App. 2011) (citing *Mac Pon Co. v. Vinsant Painting & Decorating Co.*, 423 So. 2d 216, 218 (Ala. 1982)). "Substantial performance of a contract does not contemplate exact performance of every detail but performance of all important parts." *Id.* "Whether a party has substantially performed a promise under a contract is a question of fact to be determined from the circumstances of each case." *Cobbs v. Fred Burgos Constr. Co.*, 477 So. 2d 335, 338 (Ala. 1985).

In this case, there are three separate instances where Plaintiff may have failed to cooperate or allow reasonable inspection of the premises: (1) Plaintiff's cancellation of the walk-through scheduled for August 3, 2011, (2) Plaintiff's indication that it

would not allow access to the properties until its engineer could inspect the premises, and (3) Plaintiff's demolition of the properties preventing Nationwide from further inspections. Each of these instances are insufficient for the Court to grant summary judgment in Nationwide's favor.

The Court first considers the cancelled walk-through. Plaintiff's primary objection to the ACV amount paid was that Nationwide failed to properly assess the structural integrity of the properties. A walk-through arguably would not help Nationwide assess the structural soundness of the buildings; therefore, Plaintiff's failure to allow the walk-through may not have been material or substantial to Nationwide's assessment of the ACV amount for the covered properties. Furthermore, a walk-through would arguably not have been a reasonable inspection of the premises because it would not bring to light any structural issues that may have been present. Additionally, Nationwide was given more than enough time to perform a structural analysis of the buildings in the month before Plaintiff cancelled the walk-through, but failed to do so. For these reasons, Plaintiff may have substantially performed its duty to cooperate and allow reasonable inspection of the premises.

Next, the Court considers Plaintiff's alleged indication that it was not allowing access to the properties until its engineer could perform a structural analysis. Nationwide had several prior opportunities to perform its own structural analysis of

the houses. Indeed, Nationwide hired an engineer to inspect the houses, but the engineer allegedly failed to perform a proper structural analysis. Furthermore, once Nationwide was informed that Plaintiff's engineer performed a structural analysis, it was given ample time to either perform its own structural analysis of the properties or call and object to the scheduled demolition of the properties. A reasonable jury could look at these facts and determine that Plaintiff substantially performed its duty to cooperate and allow reasonable inspection of the premises, even though it did not allow access for a few days while its own engineer inspected the properties.

Finally, by demolishing the subject properties, Nationwide contends that it was prevented from investigating the property further to determine the legitimacy of the report by Plaintiff's engineer. However, after informing Nationwide of its engineer's assessment that the houses were structurally unsound and needed to be demolished, Plaintiff gave Nationwide time to object to the demolition of the properties. Rather than call and object, Nationwide waited until the day the houses were to be demolished, and sent its objections in a letter through the mail. Based on these facts, there is a genuine question as to whether Plaintiff satisfied its duty to cooperate and allow reasonable inspection of the premises.

Plaintiff argues that, under *National Security Fire & Cas. Co. V. Coshatt*, 690 So. 2d 391 (Ala. Civ. App. 1996), the insured is only required to secure the insured

premises for a reasonable length of time in order to satisfy a duty to allow reasonable inspection, and "a four-day notice gave the insurer sufficient time to inspect before the damage was repaired as a matter of law." (Doc. 38 at 21.) However, in *Coshatt*, the court held that—as a matter of law—four days was a reasonable amount of time to hold open the covered property when the undisputed evidence showed that the insurer's agent was notified of the claim, instructed the insureds to proceed with repairs, and the insureds never impeded the insurer's effort to examine the property. Unlike the insurer in *Coshatt*, Nationwide has presented evidence that Plaintiff impeded its effort to examine the property, and Plaintiff has presented no evidence that Nationwide or its agents ever instructed Plaintiff to demolish the properties. Such evidence establishes a question of fact as to whether five days, or even four months, was a reasonable amount of time for Plaintiff to hold open the property. Therefore, this Court will not find, as a matter of law, that Plaintiff held the premises open for a reasonable amount of time.

### 2. Plaintiff's Ability to Show Damages

Next, Nationwide argues that because Plaintiff cannot prove damages—a necessary element for a breach of contract claim—summary judgment should be granted. According to Nationwide, Plaintiff can only recover the ACV of the damaged properties because it has not rebuilt or repaired the homes, and Plaintiff can offer no

evidence or expert testimony about the correct ACV of the four homes. Plaintiff agrees that it can only recover ACV on the damaged properties, but argues that the ACV should have been based on the replacement cost of the properties, not the cost to repair, because the repair cost used by Nationwide was underestimated and would have been higher than the replacement cost had a proper structural analysis been performed.

Under the policy, actual cash value is defined "as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence." (Doc. 36 at 15.) Furthermore, as stated in the policy, "[t]he actual cash value of the lost or damaged property may be significantly less than its replacement cost." (*Id.*)

Soon after the initial evaluation, Nationwide submitted checks for the ACV amount of the properties. (*Id.* at 4.) Nationwide prepared these calculations with a computer program using data inputted by Rowell following his onsite inspection. (Doc. 38 at 3.) The ACV amount determined by Nationwide included significant deductions for depreciation. (*Id.* at 13.) Nationwide determined that three of the properties were repairable, and one was a total loss. (Doc. 36 at 4.)

Plaintiff's evidence includes several experts. The first is Mr. Lang Ray, who will testify as to his opinion on the replacement value of the properties. Mr. Lang Ray owns the properties in question, has been in the real estate and construction business in Tuscaloosa for several years, and has served as an appraiser. The second expert is Plaintiff's engineer, Mr. John H. Stevens, who will testify as to the extent of damage to the properties. The third expert is Mr. Dwight Richardson, a contractor, who testified that he could rebuild the properties for a certain amount, and that the cost to repair could exceed the cost to rebuild the properties. Plaintiff has presented evidence that the properties were not structurally sound (*id.* at 18; Doc. 38 at 11), Nationwide did not perform a proper structural analysis of the houses (Doc. 38 at 16), and a structural analysis could have shown that the cost to repair the properties exceeded the cost to replace the properties. (*Id.* at 11.)

Based on the allegations in the complaint and the facts in this case, Plaintiff has presented sufficient evidence from which a reasonable jury could determine that the proper amount to be paid under the contract was higher than the amount paid by Nationwide. Although the policy provides that the ACV may be significantly less than the replacement cost of the properties, it is clear from the evidence that Nationwide calculated the ACV based on the cost to repair the properties, and Plaintiff has presented substantial evidence showing that the ACV should have been based on the

replacement costs of the properties. For these reasons, Plaintiff will be permitted to present the issue of damages to the factfinder at trial.

B. Bad Faith Claim

Bad faith claims under Alabama law have been divided into cases of "normal" bad faith, where an insurer refuses to pay, and cases of "abnormal" bad faith, where "unusual or extraordinary" circumstances arise. *State Farm Fire & Cas. Co. V. Slade*, 747 So. 2d 293, 306 (Ala. 1999). Plaintiff alleges that this case presents both a normal and an abnormal case of bad faith. (Doc. 38 at 27.)

1. Normal Bad Faith

Plaintiff alleges that Nationwide "has, in bad faith and without justifiable excuse or reason, denied plaintiff's claim for additional actual cash value and for debris removal to be paid." (Doc. 1 at 12.) Nationwide argues that its Motion for Summary Judgment as to Plaintiff's normal bad faith claim should be granted because there was a legitimate or arguable basis for paying the ACV amounts.

A normal bad faith claim in Alabama requires a plaintiff to prove "'(a) an insurance contract between the parties and a breach thereof by the defendant; (b) an intentional refusal to pay the insured's claim; (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason); [and] (d) the insurer's actual knowledge of the absence of any legitimate or arguable

reason.'" *White v. State Farm Fire & Cas. Co.*, 953 So. 2d 340, 348 (Ala. 2006) (quoting *Employees' Benefit Ass'n v. Grissett*, 732 So. 2d 968 (Ala. 1998)). Professional opinions from an inspection have been held to create a legitimate reason for refusal. *See Adams v. Auto-Owners Ins. Co.*, 655 So. 2d 969, 971–72 (Ala. 1995).

In this case, Nationwide calculated the ACV amount according to its normal procedures after an inspection by its adjuster and an engineer. Both the adjuster and engineer testified that three of the buildings were repairable and that repair amounts were appropriate for valuation. This, by itself, creates a legitimate reason for Nationwide's refusal of the claim. Furthermore, Nationwide's ACV calculation was subject to the appraisal provisions contained in the policy. The insurer arguably acted reasonably in calculating the ACV according to its established procedures and in entrusting any dispute to the appraisal process. Because Nationwide's reliance on the appraisal provision was reasonable, it had a legitimately reasonable reason to refuse the additional amount claimed by Plaintiff. For these reasons, Plaintiff's normal bad faith claim fails as a matter of law.[2]

### 2. Abnormal Bad Faith

---

[2] Alabama law also requires a plaintiff to show that it " is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law." *National Sav. Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982). Because Nationwide does not argue that Plaintiff cannot show it is entitled to recover on the contract claim as a matter of law, Plaintiff's normal bad faith claim fails as a matter of law on other grounds, and Plaintiff has not moved for summary judgment on the contract claim, the Court does not consider whether Plaintiff can show it is entitled to a directed verdict on the contract claim.

Plaintiff alleges that Nationwide "acted in bad faith in failing to adequately investigate [P]laintiff's claim." (Doc. 1 at 12.) Nationwide asserts two reasons for why its Motion for Summary Judgment as to Plaintiff's abnormal bad faith claim should be granted. First, Nationwide argues that the undisputed evidence shows it did not intentionally or recklessly fail to investigate Plaintiff's claim or properly subject it to a cognitive evaluation or review. Second, Nationwide argues that Plaintiff has failed to present any evidence showing a dishonest purpose or breach of a known duty.

An abnormal bad faith claim can be either "(1) intentional or reckless failure to investigate a claim, (2) intentional or reckless failure to properly subject a claim to a cognitive evaluation or review, (3) the manufacture of a debatable reason to deny a claim, or (4) reliance on an ambiguous portion of a policy as a lawful basis for denying a claim." *Singleton v. State Farm Fire & Cas. Co.*, 928 So. 2d 280, 283 (Ala. 2005). An abnormal bad faith claim does not require the plaintiff to show that he is entitled to a directed verdict on the contract claim, unlike a normal bad faith claim. *See Jones v. Alfa Mut. Ins. Co.*, 1 So. 3d 23, 32–34 (Ala. 2008) ("The rule in 'abnormal' cases dispensed with the predicate of a preverdict [judgment as a matter of law] for the plaintiff on the contract claim if the insurer had recklessly or intentionally failed to properly investigate a claim or to subject the results of its investigation to a cognitive evaluation."). However, it does require more than a showing of bad judgment or

negligence; there must be some dishonest purpose or breach of a known duty. *Singleton*, 928 So. 2d at 283.

In this case, Nationwide did not fail to either investigate the claims properly or to submit the claims to cognitive review. After the tornado, Nationwide promptly answered Plaintiff's request for a claim by sending its adjuster to the damaged properties. Upon review of the properties, Nationwide submitted its ACV to Plaintiff. Once a disagreement arose a few months later, Nationwide responded quickly by contacting and hiring an engineer to assess the properties. Nationwide's engineer subsequently inspected the properties and communicated his opinions to Nationwide and Plaintiff. Nationwide also showed willingness to perform a walk-through with Plaintiff's engineer and expressed interest in the report by Plaintiff's engineer. All of these facts are undisputed and show a proper investigation and cognitive review of Plaintiff's claim.

Finally, while Plaintiff has produced substantial evidence from which it may be determined that Nationwide breached the insurance policy, Plaintiff has failed to present any evidence showing a dishonest purpose or breach of a known duty. Nationwide's actions were prompt and responsive to Plaintiff's requests. Only a few days after the tornado, Nationwide had an agent evaluate Plaintiff's claim. An ACV amount was then issued to Plaintiff. Upon being alerted of a potential dispute over the

amount, Nationwide quickly retained an engineer to investigate the supplemental issues. As such, the evidence presented does not indicate a dishonest purpose or a breach of a known duty. Furthermore, the facts that indicate Nationwide's cooperativeness are undisputed. Although Nationwide may have acted negligently in not performing a proper structural analysis, more is required to demonstrate abnormal bad faith. For these reasons, it cannot be said that Nationwide had a dishonest purpose or breached a known duty in its investigation of Plaintiff's claim.

## V. Conclusion

Nationwide's Motion for Summary Judgment is due to be GRANTED IN PART, and due to be DENIED IN PART. Plaintiff has provided sufficient evidence showing a prima facie breach of contract claim. Therefore, Nationwide's motion for summary judgment is due to be DENIED as to Plaintiff's breach of contract claim. However, because Plaintiff's normal and abnormal bad faith claims fail as a matter of law, Nationwide's motion for summary judgment is due to be GRANTED as to Plaintiff's bad faith claims. A separate order consistent with this opinion will be entered.

Done this <u>7th</u> day of <u>March 2013</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
171032